[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13423
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00251-CR-T-30TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTWAN BOYD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 26, 2010)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Antwan Boyd appeals his conviction and life sentence for possession with

intent to distribute 50 or more grams of crack cocaine, in violation of 21 U.S.C.

§ 841(a)(1) and (b)(1)(A), and his conviction and concurrent 120-month sentence

for being a felon in possession of a firearm and ammunition, in violation of 18

U.S.C. §§ 922(g)(1) and 924(a)(2). After review, we affirm.

## I. BACKGROUND FACTS

### A. Offense Conduct

The Hillsborough County Sheriff's Office ("HCSO") received an

anonymous tip that Defendant Boyd had five kilograms of cocaine and a gun and

was driving around in a black truck. The caller gave an address where Boyd could

be found. HCSO officers began surveillance on the residence and observed a black

truck parked in the carport. When Boyd was seen leaving the residence in a green

car, HCSO's Sergeant James Mosher, among others, followed Boyd but did not

stop him because they believed they did not have probable cause.

Later, as officers watched, Boyd returned to his residence and briefly

accessed the black truck. Shortly thereafter, Boyd left as a passenger in a red car.

Sergeant Mosher again followed Boyd and this time executed a traffic stop after

seeing that part of the red car's license plate and decal registration were obscured

by the license plate frame, in violation of Florida law.

The driver was unable to produce a license, insurance or registration for the

2

car and admitted to Sergeant Mosher that his license was suspended. When asked separately, the driver and Defendant Boyd each indicated that the car belonged to their respective girlfriends. Boyd gave Sergeant Mosher his girlfriend Valarie Guy's telephone number to confirm her ownership.

After determining that Valarie Guy was the car's registered owner, Sergeant Mosher called Guy. Guy told Sergeant Mosher that Boyd had possessed the car for "at least a month." When Sergeant Mosher asked, Guy admitted that, although she had not yet reported the theft, Boyd had stolen her car. Guy also admitted that she had provided the earlier anonymous tip to police about Boyd's drug activities. Guy said she had seen Boyd earlier that day with five kilograms of crack cocaine and a handgun and that officers would find these items in a gray Gucci bag with a red and blue striped handle either in Boyd's vehicle or at his house. Sergeant Mosher arrested the driver of the red car and Defendant Boyd for possession of a stolen vehicle. During the arrest, Sergeant Mosher recovered the key to the black truck parked outside Boyd's residence.

HCSO officers at Boyd's residence, spoke to Boyd's aunt, who owned the home, and she consented to a search of the house and cars, although she stated that she did not know who owned the black truck. Deputy Brian Bennett looked through the window of the black truck and saw on the front seat a gray Gucci bag

3

with a blue and red handle. A narcotics dog "alerted" to the presence of drugs at the passenger side door of the black truck. Sergeant Mosher arrived with the key taken from Boyd after his arrest and opened the black truck. The dog alerted on the gray Gucci bag. Inside the bag, Deputy Bennett found 959.6 grams of crack cocaine, an electronic scale and a gun. Officers also found in the black truck registration paperwork indicating Defendant Boyd was the owner. In a white car parked in front of the black truck, officers found a box of ammunition suitable for a .45 automatic.

## B.    Pre-Trial and Trial Proceedings

A federal grand jury indicted Boyd with possessing with intent to distribute 50 grams of crack cocaine and being a felon in possession of a firearm and ammunition. On June 18, 2008, prior to trial, the government filed an information pursuant to 21 U.S.C. § 851 that it would rely on Boyd's two previous state felony convictions to seek the statutory mandatory minimum life sentence in 21 U.S.C. § 841(b)(1)(A). The § 851 information listed two 1995 Florida drug convictions– for felony delivery and felony possession of cocaine–and a 2003 Florida conviction for felony possession of cannabis.

Boyd moved to suppress all the evidence found on his person and in his truck, arguing that the traffic stop, his arrest and search of his truck were all

unlawful.  After an evidentiary hearing, the district court denied Boyd's motion to suppress.

At trial, the government presented the testimony of Sergeant Mosher and Deputy Bennett, among others, who testified about the investigation and arrest of Boyd.  The jury found Boyd guilty on both counts.  Boyd filed a motion for a new trial arguing that the district court erred in denying his motion to suppress.  Boyd pointed to evidence that Sergeant Mosher had inaccurately testified at the suppression hearing that he did not arrest Boyd until after his girlfriend, Guy, signed an affidavit swearing that Boyd had stolen her car.  After a hearing, the district court denied Boyd's motion for a new trial.

## C.    Sentencing

The Presentence Investigation Report ("PSI") recommended a base offense level of 37, pursuant to U.S.S.G. § 4B1.1(a), (b)(A), because Boyd was a career offender and faced a statutory mandatory minimum life sentence.  With a criminal history category of VI, the PSI calculated Boyd's initial advisory guidelines range as 360 months' to life imprisonment.  However, the PSI noted that, pursuant to U.S.S.G. § 5G1.1(c)(2), Boyd's advisory guidelines sentence became life imprisonment due to his statutory mandatory minimum life sentence under 21 U.S.C. § 841(b)(1)(A).

5

Boyd filed objections to the PSI, arguing, <u>inter alia</u>, that (1) he was not subject to § 841(b)(1)(A)'s mandatory life sentence because (a) his 2003 conviction for cannabis possession was not a felony and (b) his 2003 cannabis possession conviction was invalid because his counsel was ineffective and his due process rights were violated; and (2) a life sentence was cruel and unusual punishment under the Eighth Amendment.

At sentencing, the government submitted certified copies of Boyd's two prior felony convictions. Boyd submitted copies of his 2003 plea form, sentencing score sheet and plea colloquy. These documents reflect that Boyd was sentenced on May 29, 2003 for the 2003 cannabis conviction. The district court heard testimony from Boyd's counsel who had represented Boyd during his 2003 guilty plea to cannabis possession. Boyd's counsel testified that the state court judge made it clear to Boyd that he was pleading guilty to a felony offense.

The district court determined that Boyd's 2003 cannabis possession conviction was a valid conviction of record. Because Boyd's conviction was more than five years old and Boyd was represented by counsel at the time of his 2003 guilty plea, the district court concluded that it was not entitled to consider the validity of the state court judgment. The district court overruled Boyd's Eighth Amendment objection to his mandatory life sentence. The district court adopted

6

the findings and calculations in the PSI and sentenced Boyd to life imprisonment for the crack cocaine offense and to a concurrent 120-month sentence on the firearm offense. Boyd filed this appeal.

## II. DISCUSSION

On appeal, Boyd raises several arguments that are clearly without merit, which we address only briefly. First, the district court did not err in denying Boyd's motion for a new trial. Boyd's allegedly newly discovered evidence that Sergeant Mosher testified falsely at the suppression hearing as to whether he arrested Boyd before or after his girlfriend Guy signed the affidavit was merely impeachment evidence and not likely to lead to a different result. See United States v. Thompson, 422 F.3d 1285, 1294 (11th Cir. 2005).

Second, the district court correctly concluded that Boyd's challenge to his 2003 cannabis conviction listed in the government's § 851 information was time-barred. A defendant cannot challenge the validity of a prior conviction that "occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). Boyd conceded that his May 29, 2003 cannabis conviction occurred more than five years before the government filed its § 851 information on June 18, 2008.

Third, under our binding precedent, Boyd's mandatory life sentence under

7

§ 841(b)(1)(A) does not violate the Eighth Amendment's prohibition of cruel and unusual punishment. See United States v. Willis, 956 F.2d 248, 251 (11th Cir. 1992); see also United States v. Castaing-Sosa, 530 F.3d 1358, 1362 (11th Cir. 2008) (explaining that, even after United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), district courts are bound by statutory mandatory minimums).

Boyd's arguments regarding his motion to suppress and sufficiency of the evidence merit a bit more discussion.

## A.    Motion to Suppress

Boyd argues that the district court should have granted his motion to suppress on several grounds.[1]  Because a district court's denial of a motion to suppress is a mixed question of law and fact, we review the legal rulings de novo and the findings of fact for clear error. United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007).  In so doing, we view the facts "in the light most favorable to the prevailing party in [the] district court." Id.

First, Boyd contends Sergeant Mosher's traffic stop was a pretext. A traffic stop is reasonable under the Fourth Amendment when an officer has either

---

[1]Boyd argues that the ammunition found in the white car parked at his aunt's house should have been suppressed.  Because Boyd did not raise this issue in his motion to suppress, we review only for plain error. See United States v. Young, 350 F.3d 1302, 1305 (11th Cir. 2003) (applying plain error review where defendant failed to raise ground in motion to suppress). Any error in the admission of the ammunition did not affect Boyd's substantial rights given that his convictions were based overwhelmingly on the gun and drugs recovered from his black truck.

probable cause or a reasonable suspicion to believe that a traffic violation occurred. United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774 (1996); United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) (stating that Whren "squarely rejected the pretextual stop analysis" and that an officer's "ulterior motives" for a stop are not relevant so long as it is justified by probable cause).

Here, Sergeant Mosher had probable cause to believe the red car in which Boyd was riding violated Florida Statutes § 316.605(1). Section 316.605(1) requires "all letters, numerals, printing, writing, and other identification marks . . . regarding the word 'Florida'" as well as the "registration decal, and the alphanumeric designation" on a license plate to be "clear and distinct and free from . . . obscuring matter, so that they will be plainly visible and legible at all times 100 feet from the rear or front." Fla. Stat. § 316.605(1).[2] Sergeant Mosher testified, and Boyd does not dispute, that the yellow registration decal on the red car's license plate was obscured by the vanity frame, a violation of § 316.605(1).[3] The

---

[2]We decline to address Boyd's argument as to the constitutionality of § 316.605 because Sergeant Mosher's good-faith reliance on the statute's validity was objectively reasonable. See United States v. Steed, 548 F.3d 961, 969-10 (11th Cir. 2008) (citing Illinois v. Krull, 480 U.S. 340, 107 S. Ct. 1160 (1987)).

[3]Boyd relies on State v. St. Jean, 697 So. 2d 956, 957 (Fla. Dist. Ct. App. 1997). However, St. Jean involved a license plate frame that obscured the county name on a license

9

fact that Sergeant Mosher may have had other reasons for stopping the red car does not render the stop unreasonable under the Fourth Amendment.

Boyd also argues that after the traffic stop Sergeant Mosher did not have probable cause to arrest him for grand theft auto and thus a proper basis for the search incident to his arrest. Law enforcement may search a person without a warrant incident to a lawful arrest. United States v. Lyons, 403 F.3d 1248, 1253 (11th Cir. 2005). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Gordon, 231 F.3d 750, 758 (11th Cir. 2000) (quotation marks omitted). The arrest must be objectively reasonable under the totality of the circumstances. Lyons, 403 F.3d at 1253. "[S]ufficient probability, not certainty, is the touchstone of reasonableness . . . ." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997).

Boyd focuses on the fact that Sergeant Mosher arrested Boyd before Boyd's girlfriend, Guy, had signed an affidavit swearing that Boyd had stolen her car. However, even without the affidavit, Sergeant Mosher had probable cause to arrest Boyd for grand theft auto. When Sergeant Mosher stopped the red car in which

---

plate, not the registration decal, and thus does not support a conclusion that Sergeant Mosher did not have probable cause to believe the car violated § 316.605(1).

Boyd was riding, the driver and Boyd gave conflicting and undocumented stories about its ownership. Boyd insisted that the car belonged to his girlfriend, Guy, and gave Sergeant Mosher Guy's phone number. After Sergeant Mosher confirmed Guy was the red car's registered owner, he spoke to Guy, who told him that Boyd had stolen the red car and had possessed it for at least a month. These circumstances were sufficient to give rise to an objectively reasonable belief that Boyd committed grand theft of Guy's red car. Therefore, Sergeant Mosher's search of Boyd's person was incident to his lawful arrest.

Finally, Boyd contends that the warrantless search of his black truck was unlawful because it did not fall within the automobile exception. The automobile exception to the warrant requirement "allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search." Lindsey, 482 F.3d at 1293. The mobility requirement is satisfied if "the automobile is operational." United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003). Probable cause exists to search a car without a warrant if a drug dog alerts to drugs in the car. Id.

Here, nothing in the record suggests the black truck was inoperable. Law enforcement received an anonymous tip earlier that day that Boyd was driving the truck. When Deputy Bennett observed the truck, which was relatively new, it was

11

parked at Boyd's residence.  While Deputy Bennett was conducting surveillance, Boyd accessed the truck using a keyless entry.  Although the truck's driveway access to the street was blocked by a white car, Deputy Bennett testified the truck could have reached the street by driving through the front yard.  After searching the truck, Deputy Bennett used the keys to move the truck.

In addition, a drug dog alerted to the presence of drugs in the truck, giving Deputy Bennett probable cause to search the truck.  Accordingly, the automobile exception applied, and Deputy Bennett did not need a warrant to search the truck. For all these reasons, we find no error in the district court's denial of Boyd's motion to suppress.

## B.    Sufficiency of the Evidence

Boyd challenges the sufficiency of the evidence on both counts.  Normally, we review the sufficiency of the evidence de novo.  United States v. Gupta, 463 F.3d 1182, 1193 (11th Cir. 2006).  However, where, as here, the defendant failed to move for a judgment of acquittal at the close of the evidence, we will set aside a conviction only if we find a manifest miscarriage of justice.  United States v. Edwards, 526 F.3d 747, 755-56 (11th Cir. 2008).  A manifest miscarriage of justice occurs when "the evidence on a key element of the offense is so tenuous that a conviction would be shocking."  Id.  In reviewing the sufficiency of the evidence,

we consider "the evidence in the light most favorable to the government." United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005).

To convict a defendant under 21 U.S.C. § 841(a)(1), the government must prove "(1) knowing (2) possession of a controlled substance (3) with intent to distribute it." United States v. Farris, 77 F.3d 391, 395 (11th Cir. 1996). Knowledge, possession, and intent can be proved by direct or circumstantial evidence. United States v. Poole, 878 F.2d 1389, 1391-92 (11th Cir. 1989). "Constructive possession is sufficient for the possession element, and can be established by showing ownership or dominion and control over the drugs or over the premises on which the drugs are concealed." Id. at 1392.

To convict a defendant for being a felon in possession of a firearm or ammunition under 18 U.S.C. § 922(g)(1), the government must show that "the defendant was (1) in knowing possession of a firearm, (2) a convicted felon, and (3) that the firearm affected interstate commerce." United States v. Glover, 431 F.3d 744, 748 (11th Cir. 2005).[4] As with a § 841 drug offense, knowing possession under § 922(g)(1) can be established through proof of constructive possession. Id. The government proves constructive possession by showing the defendant had "ownership, dominion, or control over the firearm." Id. (quotation

---

[4]The parties stipulated that Boyd was a convicted felon and that the firearm in the black truck and the ammunition in the white car had traveled in interstate commerce.

13

marks omitted).

Boyd argues that the government failed to present sufficient evidence that he knowingly possessed either the crack cocaine or the gun. We disagree. Viewing the evidence in the light most favorable to the government and the jury's verdict, a reasonable jury could have found beyond a reasonable doubt that Boyd constructively possessed the gun and the drugs.

The trial evidence showed that the gun and drugs were found in a bag sitting on the front seat of Boyd's truck. During surveillance earlier that day, Boyd was seen accessing the truck and moving several objects around. Boyd had the keys to the truck on his person at the time of his arrest. Officers also found paperwork, including a purchase agreement, inside the truck indicating that Boyd was the truck's owner. These circumstances are sufficient for a reasonable jury to find that Boyd had dominion and control over the crack cocaine and the firearm.[5] Therefore, we find no miscarriage of justice.

For all these reasons, we affirm Boyd's convictions and sentences.

**AFFIRMED.**

---

[5]Because there was ample evidence from which a jury could find that Boyd knowingly possessed the firearm, we need not address whether the government also presented sufficient evidence that Boyd possessed the ammunition. See 18 U.S.C. § 922(g) (making it a crime for a convicted felon to possess either a "firearm or ammunition"); Castle v. United States, 287 F.2d 657, 660 (5th Cir. 1961) (explaining that all that needs to be proved is a violation of the statute and any other allegations in the indictment may be regarded as mere surplusage).